IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID RODNEY BEAVERS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-11-1442-D |
| ) | |
| LENNIERE VICTORIAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court are Defendant Bee-Line Delivery Service, Inc.'s Partial Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 155], and Defendants Gulf Delivery Systems, Inc. and Bee-Line Transportation, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 156]. Plaintiffs have timely opposed the Motions, which are at issue. The Motions are taken up together because they raise similar issues and the parties' briefs incorporate arguments regarding both motions.

This personal injury case arises from a traffic accident in Colorado on February 21, 2011, allegedly caused by the negligence of Defendant Lenniere Victorian, a commercial driver employed by Anthony B. Copeland doing business as Trinity Delivery Service. Mr. Victorian was driving a semi tractor-trailer loaded with freight that Mr. Copeland had allegedly been hired to haul and deliver for Defendants Owens Corning Roofing and Asphalt, LLC and Owens Corning Sales, LLC (collectively, "Owens Corning"), under a subcontract with Defendant Bee-Line Delivery Service, Inc., Bee-Line Transportation, Inc., and Gulf Delivery Systems, Inc. (referred to collectively in

Plaintiffs' briefs as the "Bee-Line Defendants").[1] As pertinent to the Motions, Plaintiffs assert claims against the Bee-Line Defendants for negligent hiring of Mr. Copeland and Mr. Victorian, *respondeat superior* liability for the negligence of Mr. Copeland and Mr. Victorian, and vicarious liability under a theory of joint venture or joint enterprise. In the Second Amended Complaint, Plaintiffs expressly rely on the joint venture or enterprise theory to impose liability on the Bee-Line Defendants in their Fifth, Eighth, and Ninth Causes of Action, and implicitly rely on it in their Seventh Cause of Action.[2] Plaintiffs also seek to impose liability under an alter ego or "piercing the corporate veil" theory as their Eleventh Cause of Action. The movants assert that the Second Amended Complaint fails to state a claim for relief under these theories of vicarious liability, as required by controlling Texas law. Plaintiffs do not dispute the application of Texas law under the movants' conflict-of-laws analysis, but contend they have alleged sufficient facts to state plausible claims.[3]

---

[1] Plaintiffs do not identify in the Second Amended Complaint which one of the Bee-Line Defendants contracted with Owens Corning and then subcontracted with Mr. Copeland. However, they implicitly acknowledge that the contracting party was Bee-Line Delivery Service, Inc. by focusing on it as the corporation regarding which the Bee-Line Defendants "seek to limit their liability." *See* Second Am. Compl. [Doc. No. 148], ¶ 81.

[2] The Seventh Cause of Action asserts vicarious liability of the Bee-Line Defendants for the negligence of Mr. Victorian and Mr. Copeland based on an allegation that the two men were "employees, agents or servants" of the Bee-Line Defendants. *See* Second Am. Compl. [Doc. No. 148], ¶ 65. Elsewhere in their pleading, Plaintiffs allege the Bee-Line Defendants hired Mr. Copeland and Mr. Victorian "while engaged in a joint venture or joint enterprise." *Id.* ¶ 56.

[3] Although it appears Plaintiffs' claims against Bee-Line Transportation, Inc. and Gulf Delivery Systems, Inc. rest on a theory that they were joint venturers with or alter egos of Bee-Line Delivery Service, Inc., Plaintiffs also argue in their briefs that additional facts gained through discovery would permit direct liability against these corporations. *See* Pls.' Objection Bee-Line Delivery's Mot. [Doc. No. 128] at 22-24; Pls' Objection Gulf Delivery's and Bee-Line Transp.'s Mot. [Doc. No. 135] at 7-8. This argument exceeds the scope of the instant Motions, which address vicarious liability theories. The direct claims are the subject of cross-motions for summary judgment, which present facts and materials outside Plaintiffs' pleading that are improper for consideration under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d).

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id*. at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

**Plaintiffs' Claims**

The Second Amended Complaint states the following facts pertinent to the Motions. All three of the movants are incorporated and have a principal place of business in the State of Texas. Bee-Line Delivery Service, Inc. ("Bee-Line Delivery") and Bee-Line Transportation, Inc. ("Bee-Line Transportation") are interstate motor carriers wholly owned by Gulf Delivery Systems, Inc. ("Gulf"). In addition to these subsidiaries, Gulf allegedly owns a number of other corporations, most of which utilize the words "Bee-Line" in their names.[4] Gulf is alleged to be a holding company; it "has no assets other than the stock ownership of its subsidiaries," "does no business other than owning stock in the subsidiaries," "has no office," and "exists as nothing more than paper

---

[4] Gulf also allegedly owns all of the stock of the following entities: Bee-Line Delivery Southwest, Inc.; Bee-Line Delivery Dallas, Inc.; Bee-Line Delivery Austin, Inc.; Bee-Line Logistics, Inc.; and PBM Financial, Inc.

in a small filing cabinet." *See* Second Am. Compl. [Doc. No. 148], ¶ 16. Nevertheless, Gulf allegedly has three employees, two of whom (Patrick McMillan and Bruce McMillan) are its owners and corporate officers. These two individuals allegedly hold the same offices (president and vice-president, respectively) for all Gulf's subsidiaries, including Bee-Line Delivery and Bee-Line Transportation. Also, all three corporations (Gulf, Bee-Line Delivery, and Bee-Line Transportation) allegedly maintain the same address and post office box, are insured under the same insurance policies, and share employees.

Plaintiffs allege that during the relevant time period, Gulf's employees were acting as agents of Bee-Line Delivery and Bee-Line Transportation, and Gulf had "assigned one or more of its employees to work for its subsidiaries." *Id.* ¶ 18. Patrick McMillan and Bruce McMillan allegedly each receive a salary or wages from Gulf and not from its subsidiaries, even though they perform services for Bee-Line Delivery, Bee-Line Transportation and other subsidiaries, and even though Gulf "purportedly does not conduct business." *Id.* ¶ 21. Plaintiffs allege that Bee-Line Delivery is inadequately capitalized and that Gulf guarantees the indebtedness of Bee-Line Delivery and Bee-Line Transportation. Plaintiffs also allege that Bee-Line Delivery and Bee-Line Transportation operate under the same motor carrier number and "both do business under the same name, that is, 'Bee-Line Delivery Service,' thus acting as divisions or branches of [Gulf]" and making it impossible "for the general public to distinguish between the entities." *Id.* ¶¶ 25-26. According to Plaintiffs, Bee-Line Delivery and Bee-Line Transportation "are organized or operated as a mere tool or business conduit of Gulf," and "there is such a unity between" Bee-Line Delivery, Bee-Line Transportation, and Gulf that their separateness "has ceased to exist." *Id.* ¶¶ 82-83. Plaintiffs also allege that these defendants are improperly using their corporate structure to avoid liability to Plaintiffs, that allowing them to limit or evade their liability to Plaintiffs "would result in injustice,"

and that they are "using the corporate form as an unfair device to achieve an inequitable result." *Id.* ¶¶ 83-86.

In addition, Plaintiffs make conclusory allegations that Gulf, Bee-Line Delivery, and Bee-Line Transportation "were engaged in a joint enterprise or joint venture" at all relevant times (*id.* ¶ 30) and they were "engaged in a joint venture or joint enterprise" when hiring Mr. Copeland and Mr. Victorian for the purpose of hauling the load of freight involved in the collision that injured Plaintiffs (*id.* ¶¶ 56, 67, 71).

## Discussion

### A.     Joint Venture or Enterprise

To the extent the Second Amended Complaint is unclear, Plaintiffs clarify in their briefs that they assert legal theories of joint enterprise and joint venture as a means of imposing liability on the Bee-Line Defendants for the alleged conduct of any participant in the enterprise or venture. *See* Pls.' Objection Bee-Line Delivery's Mot. [Doc. No. 128] at 20-21.  Plaintiffs are correct that this theory of joint liability – under which each party to the joint enterprise or joint venture is the agent of other parties and may be held vicariously liable for another party's negligent conduct – is an established principle of Texas law. *See Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974); *see also In re Texas Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007). Plaintiffs incorrectly argue, however, that the Second Amended Complaint contains sufficient factual allegations to state a plausible claim under this legal theory.

To prove joint or vicarious liability, the essential elements of a joint enterprise must be established: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among

the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Shoemaker*, 513 S.W.2d at 16-17 (adopting Restatement (Second) of Torts, § 491, cmt. c (1965)); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 526 (Tex. 2002). Similarly, the essential elements of a joint venture are: "a community of interest in the venture; an agreement to share profits; an agreement to share losses; and, a mutual right of control or management of the enterprise." *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981).

Based solely on the allegations of the Second Amended Complaint,[5] there are insufficient facts from which a plausible claim of a joint enterprise or a joint venture among the Bee-Line Defendants and others can be inferred, which would support vicarious liability for conduct of the alleged tortfeasors. The asserted purpose of any joint enterprise or venture was "hauling and delivering the freight loaded on the tractor-semitrailer driven by Victorian that crashed into the Beavers family." *See* Second Am. Compl. [Doc. No. 148], ¶¶ 67, 71. There are no allegations, however, to suggest an implied agreement among the Bee-Line Defendants (or among them and others) regarding this particular venture or enterprise, and nothing to suggest they shared an equal or mutual right to control it. In arguing in support of these theories of vicarious liability, Plaintiffs point to the paragraphs of their pleading regarding the interrelationships between Bee-Line Delivery, Bee-Line Transportation, and Gulf. These general allegations do not appear to relate in any way to the particular shipment involved in this case, as would be necessary to establish that a joint enterprise or venture existed for the asserted purpose. Nor do these allegations show any agreement or right of control regarding the shipment at issue. In short, Plaintiffs have pled insufficient facts to raise above a speculative level their claims based on the alleged joint enterprise or joint venture.

---

[5] Facts not alleged in Plaintiffs' pleading cannot properly be considered under Rule 12(b)(6). *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

Plaintiffs contend their allegations are sufficient based on a general principle that Rule 8(a) requires only fair notice to a defendant of the basis of a claim, that is, adequate notice to prepare a defense. *See* Pls.' Objection to Bee-Line Delivery's Mot. [Doc. No. 128] at 7-12, 20; Pls.' Objection to Gulf Delivery's and Bee-Line Transp.'s Mot. [Doc. No. 135] at 11-12.  However, the contextual approach required by the *Twombly/Iqbal* standard "means comparing the pleading with the elements of the cause(s) of action.  '[W]hile Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims' animating the elements of her causes of action. Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient."  *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (citations omitted; quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (alteration by the court in *Burnett*); quoting *Iqbal*, 556 U.S. at 678).  In this case, the Second Amended Complaint alleges no facts to state a plausible claim that the Bee-Line Defendants were engaged in a joint venture or joint enterprise for the purpose of hauling and delivering the freight on Mr. Victorian's truck, which is an element of Plaintiffs' asserted causes of action for vicarious liability.

Therefore, any claim asserted against the Bee-Line Defendants that rests on a theory of joint or vicarious liability based on a joint venture or enterprise must be dismissed.

**B.     Alter Ego/Piercing the Corporate Veil**

"To pierce the corporate veil and impose liability under an alter ego theory pursuant to *SSP Partners* [*v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008)], a plaintiff must show: (1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose . . . ." *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App. 2012).

> To satisfy the first consideration in piercing the corporate veil – whether the persons or entities sought to be charged with liability are alter egos of the primary debtor – the relationship between corporate entities can be assessed using factors such as:
>
> • whether the entities shared a common business name, common offices, common employees, or centralized accounting;
>
> • whether one entity paid the wages of the other entity's employees;
>
> • whether one entity's employees rendered services on behalf of the other entity;
>
> • whether one entity made undocumented transfers of funds to the other entity; and
>
> • whether the allocation of profits and losses between the entities is unclear.

*Tryco*, 390 S.W.3d at 509 (citing *SSP Partners*, 275 S.W.3d at 450-51). Factual allegations to support a number of these factors are set forth in the Second Amended Complaint, and would support Plaintiffs' alter ego theory of liability, if the second element of this theory is also alleged.

The Texas Supreme Court made clear in *SSP Partners* that to impose alter ego liability, a second element of proof is necessary:

> There must also be evidence of abuse, or as we said in *Castleberry* [*v. Branscum*, 721 S.W.2d 270 (Tex. 1986)], injustice and inequity. By "injustice" and "inequity" we do not mean a subjective perception of unfairness by an individual judge or juror; rather, these words are used in *Castleberry* as shorthand references for the kinds of abuse, specifically identified, that the corporate structure should not shield – fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like. Such abuse is necessary before disregarding the existence of a corporation as a separate entity.

*SSP Partners*, 275 S.W.3d at 455. In this case, Plaintiffs cite the allegations of the Second Amended Complaint that Bee-Line Delivery is undercapitalized and the "corporate fiction among the Bee-Line Defendants is being relied upon to avoid liability to Plaintiffs." *See* Pls.' Objection Bee-Line Delivery's Mot. [Doc. No. 128] at 13, 15.[6]

Upon careful consideration, the Court finds these allegations to be sufficient, although barely, to state a plausible claim for alter ego liability against Bee-Line Transportation and Gulf. The alleged facts, if proven, that the Bee-Line Defendants had manipulated their relationships to place Bee-Line Delivery at the center of Plaintiffs' claims and to undercapitalize this entity so Plaintiffs cannot recover a substantial judgment, might be sufficient to pierce the corporate veil and to impose liability on Bee-Line Transportation and Gulf for Bee-Line Delivery's putative debt to Plaintiffs. These allegations would not, of course, support alter ego liability of Bee-Line Delivery, as prayed for in Plaintiffs Eleventh Cause of Action. See Second Am. Compl. [Doc. No. 148] at 17. Therefore, to this limited extent, Plaintiffs' alter ego claim should be dismissed.[7]

## Conclusion

For these reasons, the Court finds that the Second Amended Complaint fails to state plausible claims for vicarious liability of the Bee-Line Defendants under the asserted theories of joint venture

---

[6] Plaintiffs also point to the allegation that "the Bee-Line Defendants are operated as mere tools or business conduits of each other." *Id*. at 13-14. However, this is merely another way of saying the corporations are alter egos and is insufficient without additional evidence of abuse. *See SSP Partners*, 275 S.W.3d at 454.

[7] Plaintiffs correctly note in the briefs that "piercing the corporate veil is not a cause of action, but instead a means of imposing liability for an underlying cause of action." *See* Pls.' Objection to Bee-Line Delivery's Mot. [Doc. No. 128] at 16.

or enterprise liability, or a claim of alter ego liability of Bee-Line Delivery Service, Inc. Only these claims of the Second Amended Complaint should be dismissed.[8]

IT IS THEREFORE ORDERED that Defendant Bee-Line Delivery Service, Inc.'s Partial Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 155] and Defendants Gulf Delivery Systems, Inc. and Bee-Line Transportation, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 156] are GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 8th day of July, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[8] Because Plaintiffs do not request permission to further amend their pleading, the dismissal will be without leave to amend. *See Burnett*, 706 F.3d at 1238 n.4.