IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID RODNEY BEAVERS, *et al.*,    )
                                           )
              Plaintiffs,      )
                                           )
v.                                      )     Case No. CIV-11-1442-D
                                         )
LENNIERE VICTORIAN, *et al.*,    )
                                         )
              Defendants.    )

# O R D E R

Before the Court are Plaintiffs' Motion for Partial Summary Judgment Against Bee-Line Delivery on Claim of Vicarious Liability for Negligence of Defendants Copeland and Victorian [Doc. No. 46] and Defendant Bee-Line Delivery Service, Inc.'s Motion for Summary Judgment [Doc. No. 202], filed pursuant to Fed. R. Civ. P. 56. The Motions are fully briefed and at issue.[1] Because they involve overlapping claims and issues, the Motions will be addressed together.

## Factual and Procedural Background

This personal injury case arises from a traffic accident in Colorado on February 21, 2011, allegedly caused by the negligence of Defendant Lenniere Victorian, a commercial driver employed by Anthony B. Copeland doing business as Trinity Delivery Service.[2] Mr. Victorian was driving a semitrailer-tractor loaded with freight that Mr. Copeland had been engaged to haul and deliver by Defendant Bee-Line Delivery Service, Inc. ("Bee-Line"). Bee-Line had previously been hired by

---

[1] Plaintiffs' Motion is supported by opening and reply briefs [Doc. Nos. 46 & 73]; it is opposed by Defendant Bee-Line Delivery Service, Inc.'s response and surreply briefs [Doc. Nos. 70 & 113]. Defendant Bee-Line Delivery Service Inc.'s Motion is supported by opening and reply briefs [Doc. Nos. 202 & 237]; it is opposed by Plaintiffs' response brief. [Doc. No. 222]. Defendant Owens Corning Roofing and Asphalt, LLC, which Plaintiffs subsequently dismissed, also filed a brief [Doc. No. 95] regarding Plaintiffs' Motion.

[2] Defendants removed Plaintiffs' state court action to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. After removal, Plaintiffs filed amended pleadings that similarly invoke diversity jurisdiction. *See* First Am. Compl. [Doc. No. 104], ¶¶ 2-13; Second Am. Compl. [Doc. No. 148], ¶¶ 2-13.

the shipper of the freight, Owens Corning Roofing and Asphalt, LLC ("Owens Corning"), to provide transportation services for interstate shipments. Mr. Copeland was a named defendant, but he is now deceased and has been replaced in this action by the administrator of his estate; the estate has admitted vicarious liability for any negligence of Mr. Victorian.[3]

By the Second Amended Complaint, Plaintiffs assert claims against Bee-Line that include: 1) vicarious liability for the negligence of Mr. Victorian, attributed to Mr. Copeland, based on legal theories discussed *infra* that allegedly deem Mr. Copeland (acting as Trinity Delivery Service) and his employee, Mr. Victorian, to be agents or employees of Bee-Line;[4] and 2) negligent hiring of Mr. Copeland and his employee, Mr. Victorian. Plaintiffs' Motion seeks a summary judgment ruling regarding their first theory of liability, while Bee-Line's Motion seeks summary judgment in its favor on both theories. Bee-Line also seeks a summary judgment ruling that punitive damages are not recoverable under the undisputed facts shown by the existing record.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable

---

[3]  Capacity to be sued under Fed. R. Civ. P. 17(b)(3) is determined by the law of the forum state. Oklahoma law holds "that in the case of a sole proprietorship, the firm name and the sole proprietor's name are but two names for one person." *Bishop v. Wilson Quality Homes*, 986 P.2d 512, 514-15 (Okla. 1999).

[4]  Plaintiffs also asserted in their pleading that Bee-Line is vicariously liable for the negligence of Mr. Copeland in hiring, training, and supervising Mr. Victorian. *See* Second Am. Compl. [Doc. No. 148], ¶¶ 44-47, 65. This negligence claim, denominated Plaintiffs' Third Cause of Action, has been resolved by summary judgment in favor of Mr. Copeland's estate. *See* Order of November 28, 2102 [Doc. No. 233]. Because Mr. Copeland's negligence is not established, Bee-Line cannot be vicariously liable for it.

inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Undisputed Facts**

Although the parties disagree about which facts are relevant to establish Bee-Line's alleged liability, many facts asserted by the parties in support of their respective positions are undisputed. Bee-Line is, and was at the relevant time, registered as a motor carrier with the Federal Motor Carrier Safety Administration (FMCSA), No. MC288734, operating under authority of the United States Department of Transportation (DOT), No. 598623; it was also registered as a contract carrier

and a broker. At the relevant time, Mr. Copeland d/b/a Trinity Delivery Service was registered as a motor carrier, FMCSA No. MC716172 and DOT No. 2042113.

In April, 2010, Owens Corning and Bee-Line entered into a written contract, entitled Motor Carrier/Shipper Agreement (the "Shipping Agreement"), under which Bee-Line agreed to perform motor carrier transportation services for Owens Corning in accordance with the terms and conditions of the Shipping Agreement. As pertinent to the parties' arguments in this case, the Shipping Agreement provided for Bee-Line to take possession of a freight shipment from Owens Corning upon execution of the freight documentation, and to maintain responsibility for the shipment until it was tendered for delivery to Owens Corning's consignee. Bee-Line agreed to provide and operate all motor vehicles and equipment necessary to perform the motor carrier transportation services in a safe and efficient manner, and to provide properly trained and licensed drivers and other personnel needed to perform the services. Bee-Line also agreed to comply with equipment and operational protocols that were set forth in Appendix A to the Shipping Agreement, including responsibilities of drivers, and to maintain insurance coverage as set forth in Appendix G.

Plaintiffs (and Owens Corning) contend the Shipping Agreement expressly prohibited Bee-Line from acting as a broker or delegating its motor carrier responsibilities to another carrier. Bee-Line disagrees and contends the Shipping Agreement permitted it to use independent contractors, including another motor carrier, to perform the transportation services. Regardless of the parties' disagreement on this issue, Bee-Line asserts that the Shipping Agreement has no bearing on its status as a motor carrier with respect to third parties, and that its contractual relationship with or obligations to Owens Corning are irrelevant to Plaintiffs' personal injury claims against it. Bee-Line asserts that the motor carrier for the freight shipment involved in this case was Trinity Delivery Service, which was assigned by Bee-Line to transport the shipment at issue.

Bee-Line relies on the terms of its contract with Mr. Copeland d/b/a Trinity Delivery Service.[5] On February 21, 2011 (the date of the accident), Bee-Line as broker and Trinity Delivery Service as carrier entered into a written contract, entitled Transportation Brokerage Agreement (the "Brokerage Agreement"), which Mr. Copeland executed as "Owner" of Trinity Delivery Service. *See* Pls.' Mot. Partial Summ. J., Ex. 9 [Doc. No. 46-9] at 7; Bee-Line's Mot. Summ. J., Ex. 3 [Doc. No. 202-3]. The Brokerage Agreement identified the parties' status as an independent contractor relationship, and not an agency, partnership, or any form of employer-employee relationship. By the Brokerage Agreement, Trinity Delivery Service agreed to provide transportation services for property tendered for delivery, subject to the availability of suitable equipment and the specific shipment instructions. The Brokerage Agreement required Trinity Delivery Service to furnish all equipment needed to provide the transportation services, to maintain equipment in good repair and working order, to employ properly licensed and trained personnel, and to comply with all applicable DOT laws and regulations, as well as other laws applicable to motor carrier operations.

Bee-Line also relies on additional facts: Mr. Copeland's motor carrier certificate authorized Trinity Delivery Service to act as a "common carrier of property" and to transport the general freight at issue in this case, *see* Bee-Line's Mot. Summ. J., Ex. 4 [Doc. No. 202-4]; Mr. Copeland or Trinity Delivery Service owned the tractor and leased the semitrailer involved in the shipment; the tractor bore a logo of Trinity Delivery Service and the FMCSA and DOT numbers registered to Mr. Copeland acting as Trinity Delivery Service; Bee-Line had no direct relationship with Mr. Victorian and did not designate his route nor directly control his activities; and Bee-Line's

---

[5] Bee-Line initially contended it contracted with a corporation formed by Mr. Copeland, Trinity Delivery Service, Inc. The record is clear, however, the authorized motor carrier was a sole proprietorship, "Mr. Copeland d/b/a Trinity Delivery Service." *See* Bee-Line's Resp. Pls.' Mot. Partial Summ. J., Exs. 4 & 10 [Doc. Nos. 70-4 & 70-10]; Bee-Line's Mot. Summ. J., Exs. 1 & 4 [Doc. Nos. 202-1 & 202-4].

dispatcher confirmed through an FMCSA online database before contracting with Mr. Copeland that his operating authority was active, his insurance coverage was satisfactory, and available information did not reflect any prior accidents or an adverse safety rating. Plaintiffs present additional facts to show that the dispatcher was inexperienced and operating under a short deadline to locate an available motor carrier, that he hired Mr. Copeland at the last minute without inquiring into his trucking business or verifying information viewed on FMCSA's website, and that he did not receive confirmation of Bee-Line's insurance coverage until the day after the accident occurred.[6]

Pursuant to their respective written agreements, Owens Corning generated documentation regarding the freight shipment involved in the accident – a "shipment tender," an invoice, and a bill of lading – that identified Bee-Line as the carrier of the freight, while Bee-Line generated a rate confirmation document signed by Mr. Copeland that listed Trinity Delivery Service as the carrier. *See* Pls.' Mot. Partial Summ. J., Exs. 3-5 [Doc. Nos. 46-3, 46-4, 46-5]; Bee-Line's Resp. Br., Ex. 6 [Doc. No. 70-6]. The bill of lading listed Trinity Delivery Service as the trucking company. *See* Bee-Line's Resp. Br., Ex. 6 [Doc. No. 70-6]. Bee-Line's confirmation document included special instructions to Trinity Delivery Service, and stated as one requirement: "Driver must place 'Bee-Line' sign in Windshield of Tractor to enter plant." *See* Pls.' Mot. Partial Summ. J., Ex. 5 [Doc. No. 46-5].

Plaintiffs' position is that Bee-Line was the motor carrier for the freight shipment and had a nondelegable duty of care with regard to transportation services provided for Owens Corning

---

[6] Plaintiffs also recite opinions of their retained expert, Norris Hoover, regarding Mr. Victorian's conduct and a conclusion that "[i]t was negligent to hire and entrust Lenniere Victorian with a tractor-semi trailer for this haul." *See* Pls.' Resp. Bee-Lines Mot. Summ. J. at 22, ¶ 27. Defendants challenge the admissibility of Mr. Hoover's opinions in a separate *Daubert* motion. With respect to Plaintiffs' negligent hiring claim, however, these opinions are irrelevant because they do not address Bee-Line's hiring of Mr. Copeland or his trucking company.

under the Shipping Agreement.  By their Motion, Plaintiffs seek a summary adjudication of Bee-Line's vicarious liability for the negligence of its "sub-hauler," Mr. Copeland d/b/a Trinity Delivery Service (acting through employee, Mr. Victorian), based on common law principles and the federal Motor Carrier Safety Act and implementing regulations.  *See* Pls.' Mot. Partial Summ. J. [Doc. No. 46], at 17-23.  Bee-Line's position is that no vicarious liability arises from acts of a duly licensed and insured motor carrier (Trinity Delivery Service), which was an independent contractor engaged to provide the semitrailer and tractor, employ the driver, and transport the freight shipment involved in the accident.  Bee-Line also asserts that Plaintiffs lack sufficient evidence to establish any negligence by Bee-Line in its selection of Mr. Copeland's proprietorship to transport the load.

## Discussion

### A.    Choice of Law

Plaintiffs discuss in their briefs various tort law theories of liability and cite cases from numerous jurisdictions, without any discussion of the proper choice of law.  Particularly with respect to one legal theory – namely, that Bee-Line was a regulated common carrier engaged in a business involving sufficient risk that tort liability may be imposed under the Restatement (Second) of Torts, § 428 – Plaintiffs rely heavily on citations of California case law.  Bee-Line notes this lack of attention by Plaintiffs to "which jurisdiction's law they believe controls," and observes that "Section 428 has not been adopted by Oklahoma, Texas, or Colorado, the states whose law might apply here."  *See* Bee-Line's Combined Surreply Br.[Doc. No. 113] at 11 n.1.  Because a choice of state laws may affect Plaintiffs' right of recovery under a common law theory of liability, the Court begins its analysis by addressing this antecedent question.[7]

_____

[7] Of course, as to issues governed by federal law, choice of a particular state's law is unimportant.
(continued...)

7

"A federal court sitting in diversity applies the substantive law, including the choice of law rules, of the forum state." *See BancOklahoma Mortgage Corp. v. Capital Title Co*., 194 F.3d 1089, 1103 (10th Cir. 1999) (internal quotation omitted). Oklahoma has adopted the general rule of the Restatement (Second) of Conflict of Laws "that the rights and liabilities of parties with respect to a particular issue in tort shall be determined by the local law of the state which, <u>with respect to that issue</u>, has the most significant relationship to the occurrence and the parties." *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974) (emphasis added); *see* Restatement (Second) of Conflict of Laws, § 145 (1971). Under this significant relationship test, the following factors should be considered and "evaluated according to their relative importance with respect to a particular issue:

> (1) the place where the injury occurred,
>
> (2) the place where the conduct causing the injury occurred,
>
> (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (4) the place where the relationship, if any, between the parties occurred."

*Brickner*, 525 P.2d at 637.

With respect to the issue of vicarious liability, the parties cite no case law applying Oklahoma's choice-of-law rules to this issue. The Court's research has found one case, *Edwards v. McKee*, 76 P. 3d 73, 76 (Okla. Civ. App. 2003), in which an injured passenger's claim against the driver of a semitrailer truck and his employer was found to be governed by the law of the state where the accident occurred. In this case, with respect to Bee-Line's potential liability for the negligence of Mr. Victorian, imputed to Mr. Copeland or Trinity Delivery Service, the Court agrees that the

---

[7](...continued)
*See*, *e.g.*, *Price v. Westmoreland*, 727 F.2d 494, 496 (5th Cir. 1984) (ICC regulations "preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee").

place where the collision occurred (Colorado) is important under both of the first two factors and that neither of the other factors points to a particular state. The parties reside or conduct business in Oklahoma and Texas, and Plaintiffs had no direct relationship with Bee-Line. Accordingly, the Court finds that Colorado has the most significant relationship to the occurrence and the parties for purposes of Bee-Line's vicarious liability for Plaintiffs' injuries, except as provided by federal law.

With respect to Bee-Line's possible liability for negligent hiring of Mr. Copeland's proprietorship to transport the subject load, Bee-Line contends in its summary judgment brief that there is no conflict among the laws of Colorado, Oklahoma, and Texas regarding this claim and, thus, no need to choose a particular state's law. Plaintiffs do not disagree with this contention. Accordingly, the Court will utilize the same case authorities cited by the parties with regard to Plaintiffs' negligent hiring claim.

## B. Vicarious Liability

Plaintiffs primarily rely on two theories of vicarious liability: 1) Bee-Line was the "motor carrier" for the Owens Corning shipment, as defined by 49 U.S.C. § 13102(4), and had a nondelegable duty of care under common law principles, as recognized in Section 428 of the Restatement (Second) of Torts; and 2) Bee-Line was a statutory employer of Mr. Copeland or Trinity Delivery Service (and, thus, Mr. Victorian) as determined by the Federal Motor Carrier Safety Regulations (FMCSR), specifically 49 C.F.R. § 390.5, and case law.[8]

---

[8] Plaintiffs also invoke equitable principles and "the doctrine of quasi-estoppel," which prevents a party from changing positions to avoid an obligation or consequence of a position previously taken to obtain a benefit. *See* Pls.' Mot. Partial Summ. J. [Doc. No. 46] at 25-26. Plaintiffs provide no persuasive authority, however, for applying this doctrine as a principle of tort law. The cases cited by Plaintiffs were not decided in this context and are inapposite. Where the doctrine has been recognized, it requires mutuality of parties; estoppel cannot be invoked by a stranger to the transaction. *See Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964); 28 Am. Jur. 2d *Estoppel & Waiver*, § 120 (2011). Thus, the Court finds that Plaintiffs lack any substantial legal support for this theory, and it should be disregarded.

## 1. Liability for Nondelegable Duty

Federal law defines a "motor carrier" as "a person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(14).  Plaintiffs argue that Bee-Line was acting as a "motor carrier" while providing services to Owens Corning under the Shipping Agreement and it had a nondelegable duty as a motor carrier that renders it liable for injuries caused during the provision of those services.  Bee-Line disagrees and argues, in effect, that it delegated its motor carrier responsibilities to Mr. Copeland, as Trinity Delivery Service, through the Brokerage Agreement. Plaintiffs contend that the Shipping Agreement prohibited Bee-Line from brokering its "motor carrier" duties to another motor carrier, and that the Brokerage Agreement violated Bee-Line's contractual obligations to Owens Corning and, thus, was invalid.  The parties also disagree whether there can be more than one "motor carrier" for a single load.[9]

Owens Corning appears to take Plaintiffs' side of this dispute.  In a reply brief that Owens Corning filed in opposition to Bee-Line's response to Plaintiffs' Motion (before being dismissed from the case), Owens Corning argued that the Shipping Agreement determined Bee-Line's status and duties with regard to the shipment at issue, and that Bee-Line could be held liable as a motor carrier with regard to the load.  This argument, like part of Plaintiffs' argument, blurs the distinction between liability for damaged cargo, which is governed by federal statutes under the Carmack Amendment, 49 U.S.C. § 14706, and liability for personal injuries to the public, as to which federal

---

[9]  Bee-Line's only support for its position that "[t]here can be only one motor carrier transporting a load" is the opinion of an expert witness.  *See* Bee-Line's Mot. Summ. J. [Doc. No. 202] at 3, ¶ 43. However, there is legal authority to the contrary.  *See Simmons v. King*, 478 F.2d 857, 863 (5th Cir. 1973) (one registered motor carrier was vicariously liable as the statutory employer of the negligent driver based on a lease agreement, while another registered motor carrier that employed the driver could be liable under common law standards based on its actual control over him).

statutes are silent.  *See, e.g.*, *Schramm v. Foster*, 341 F. Supp. 2d 536, 547 (D. Md. 2004) (Motor

Carrier Safety Act and FMCSR do "not create a private right of action for personal injuries").

Upon consideration of the parties' arguments, the Court finds that the identity of the "motor

carrier" in the transportation services that resulted in Plaintiffs' injuries is relevant to the issue of

Bee-Line's liability only if there exists a legal basis for attaching liability for personal injuries to that

status.  Plaintiffs provide no legal authority for the proposition that federal law imposes such

liability, and the Court has found none.  Instead, the source of liability, if any, must come from state

tort law and the common law principles argued in Plaintiffs' briefs.[10]  Under the Court's choice-of-

law ruling, Bee-Line may be held liable for Plaintiffs' injuries based solely on its status as a "motor

carrier" – assuming that status is established – only if Colorado law would recognize a nondelegable

duty of a motor carrier to provide its services in a manner reasonably safe to the public.

The Court has found no legal authority to suggest that such a duty would be found as a

matter of Colorado law.  Plaintiffs argue by reference to cases from other jurisdictions that a motor

carrier should have a nondelegable duty to transport goods with reasonable safety to the public.[11]

All of these cases rely on Section 428 of the Restatement (Second) of Torts, which provides:

> An individual or a corporation carrying on an activity which can be lawfully carried
> on only under a franchise granted by public authority and which involves an
> unreasonable risk of harm to others, is subject to liability for physical harm caused
> to such others by the negligence of a contractor employed to do work in carrying on
> the activity.

---

[10] While Plaintiffs rely heavily on Bee-Line's alleged agreement with Owens Corning not to delegate
the transportation duties to another motor carrier, Plaintiffs do not contend they have any contractual rights
under the Shipping Agreement.  Thus, the Court confines its analysis to tort law principles.

[11]  Most cases cited by Plaintiffs predate the federal Motor Carrier Safety Act enacted in 1984, and
all apply laws of states other than Colorado.  Some also involve leasing arrangements, discussed *infra*
(note 13).

Restatement (Second) of Torts, § 428 (1965).  Commentary to this section explains that "[t]he rule stated in this Section is principally applicable to public service corporations which, as such, are permitted by their franchise to use instrumentalities which are peculiarly dangerous unless carefully operated."  *Id*. cmt. a.  The Court finds no indication that the Colorado Supreme Court would adopt this rule or apply it to interstate motor carriers.

The Colorado Supreme Court has, however, adopted another rule set forth in other sections of the Restatement: "the 'inherently dangerous activity' exception to the general rule that employers of independent contractors are not liable for the torts of their contractors."  *See Huddleston ex rel. Huddleston v. Union Rural Elec. Ass'n*, 841 P.2d 282, 286 (Colo. 1992) (en banc).  Under this exception,

> an activity will qualify as 'inherently dangerous' when it presents a special or peculiar danger to others that is inherent in the nature of the activity or the particular circumstances under which the activity is to be performed, that is different in kind from the ordinary risks that commonly confront persons in the community, and that the employer knows or should know is inherent in the nature of the activity or in the particular circumstances under which the activity is to be performed.  In addition, although an activity may be inherently dangerous, an employer will not be liable for injuries caused by the collateral negligence of its independent contractor in performing that activity.

*Id*. at 290.  The court defined "collateral negligence" as follows:

> It is negligence of the independent contractor that occurs after the independent contractor has departed from the ordinary and prescribed way of doing the work, when such departure is not reasonably to have been contemplated by the employer, and when such negligence would not have occurred but for such a departure.  In the event that such a departure is by itself a negligent act or omission on the part of the independent contractor, that too is "collateral negligence."  What is common in either case is that "collateral negligence" is negligence not reasonably to have been contemplated by the employer, in contrast to negligence reasonably to have been contemplated as a recognizable risk associated with the ordinary or prescribed way of doing the work under the circumstances.

*Id*. at 288-89 (footnote omitted).

In this case, there are no facts in the summary judgment record to suggest that the transportation services Bee-Line employed other motor carriers to provide for Owens Corning, or that it engaged Mr. Copeland's company to provide on this occasion, was "inherently dangerous" activity. Courts applying this exception have declined to apply it to a logging truck transporting several tons of logs on steep mountain roads, *see Ek v. Herrington*, 939 F.2d 839, 843-44 (9th Cir. 1991) (Idaho law); a logging truck hauling pulp timber, *see Williams v. Tennessee River Pulp & Paper Co.*, 442 So. 2d 20, 23 (Ala. 1983); and a tractor-livestock trailer loaded with cattle, *see Kime v. Hobbs*, 542 N.W.2d 705, 418 (Neb. 1997). Further, if transporting the subject load of shingles from Denver to Phoenix in winter might qualify as "inherently dangerous," the facts regarding the accident stated in the record lead to an inescapable conclusion that "collateral negligence" was involved. If Plaintiffs' evidence is believed, "Mr. Victorian was grossly negligent in the operation of a commercial motor vehicle." *See* Pls.' Response Bee-Line's Mot. Summ. J., Ex. 10 [Doc. No. 222-10] at 4. He embarked on a trip through Wolf Creek Pass driving a semitrailer-tractor rig with a gross weight of approximately 76,000 pounds without taking proper safety precautions; he failed to use the proper gear or maintain control of the rig as it descended the west side of the pass; he failed to inspect or properly maintain the air brakes, which were inoperative due to excessive, frozen water in the air tanks; and after the collision, Mr. Victorian was cited for careless driving and multiple safety violations. Under these circumstances, there is no indication that Mr. Victorian's negligence, if proven, was reasonably contemplated by Bee-Line. *See Ek*, 939 F.2d at 844 (malfunctioning brakes and overloading a logging truck are ordinary risks that the employer of an independent contract has no duty to prevent). Therefore, the "inherently dangerous activity" exception cannot be applied to hold Bee-Line vicariously liable for its independent contractor's negligence, if any, in this case.

13

## 2. "Statutory Employee" Principle

Plaintiffs also seek to avoid the common law rule of non-liability for negligence of an independent contractor by invoking a "statutory employee" exception developed under 49 C.F.R. § 390.5. This regulation, which defines terms for purposes of FMCSR, states in pertinent part:

> Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) . . . .

49 C.F.R. § 390.5 (emphasis added).[12] "By eliminating the common law employee/independent contractor distinction, the definition serves to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public." *Consumers County Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002).[13]

By its terms, Section 390.5 is inapplicable to create a statutory employment relationship between Bee-Line and Mr. Copeland doing business as Trinity Delivery Service under the facts of this case. First, FMCSR defines "employer" to mean "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it." 49 C.F.R. § 390.5. It is undisputed that Bee-Line

---

[12] The Motor Carrier Safety Act contains a similar definition of "employee," including that it means "an individual not an employer." *See* 49 U.S.C. § 31132(2).

[13] A similar "statutory employee" exception has also been recognized under statutory provisions and regulations for leased motor vehicles. *See* 49 U.S.C. § 14102 (formerly, § 11107); 49 C.F.R. § 376.12 (formerly, § 1057.12 or, earlier, § 1057.4). Cases decided under leasing rules vary among jurisdictions on the issues of whether the presumption of *respondeat superior* liability is rebuttable or irrebuttable and whether proof of conduct within the scope of employment is required. *See, e.g.*, *Schell v. Navajo Freight Lines, Inc.*, 693 P.2d 382, 384-85 (Colo. App. 1984) (electing to follow the "great weight of authority" for an irrebuttable presumption and the "preferable rule" requiring acts within the scope of employment); *see also Wykoff Trucking, Inc. v. Marsh Bros. Trucking Serv, Inc.*, 569 N.E.2d 1049, 1052-53 (Ohio 1991) (discussing minority and majority views regarding leased vehicles). These provisions are inapplicable in this case, however, because it is undisputed that no leasing or interchange agreement was involved.

neither owned nor leased the commercial motor vehicle used in the interstate shipment at issue, nor assigned an employee to operate it. More importantly, to the extent that Bee-Line might have "assigned" Mr. Copeland or Trinity Delivery Service to operate a commercial motor vehicle in the transaction, Mr. Copeland could not be an "employee" because he was not the driver operating the commercial motor vehicle but the "employer" of the driver, acting under his own motor carrier authority. An "employee" is "any individual, other than an employer . . . ." *Id.*

Courts have adopted a "plain language" interpretation of § 390.5 to hold that a registered motor carrier that is an employer of an individual driver of a commercial motor vehicle cannot be a statutory employee of another registered motor carrier. *See*, *e.g.*, *Illinois Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 255-56 (Ind. App. 2009). The courts' analysis in these cases focuses largely on the term "individual" in holding that a corporation or other legal person cannot fit the definition of "employee." *See Brown v. Truck Connections Int'l, Inc.*, 526 F. Supp. 2d 920, 924-25 (E.D. Ark. 2007). While most cases have involved corporate employers of commercial truck drivers, the same rule may apply to a sole proprietorship. *See Martinez v. Hays Constr., Inc.*, 355 S.W.3d 170, 184 n.4 (Tex. App. 2011) ("Under the plain meaning of Rule 390.5, . . . Bello Transportation, a sole proprietorship, cannot be an employee."). Under the circumstances of this case, the Court is persuaded that Mr. Copeland, acting as Trinity Delivery Service, could not be considered a statutory employee of Bee-Line because he was the employer of Mr. Victorian, the employee operating the commercial motor vehicle.

Plaintiffs urge a different reading of § 390.5 based on FMCSA's interpretative guidance regarding the regulation that states as follows:

**Question 17**: May a motor carrier that employs owner-operators who have their own operating authority issued by the ICC or the Surface Transportation Board transfer the responsibility for compliance with the FMCSRs to the owner-operators?

*Guidance*: No. The term ''employee,''' as defined in §390.5, specifically includes an independent contractor employed by a motor carrier. The existence of operating authority has no bearing upon the issue. The motor carrier is, therefore, responsible for compliance with the FMCSRs by its driver employees, including those who are owner-operators.

*See* FMCSA Interpretation for 390.5 (available at http://www.fmcsa.dot.gov/rules-regulations/ administration/fmcsr/fmcsrruletext.aspx?reg=390.5&guidance=Yeder, accessed March 17, 2014). This informal agency interpretation contained in a policy statement or enforcement guideline is not entitled to the degree of deference afforded to formal regulations under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but is "'entitled to respect' . . . to the extent that these interpretations have the 'power to persuade.'" *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Plaintiffs cite no authority for the proposition that FMCSA's interpretive guidance regarding 49 C.F.R. § 390.5 was intended to address the issue of common law tort liability for personal injuries caused by negligence of a commercial truck driver. Rather, the agency was speaking to the question of who is responsible for compliance with FMCSR, which establishes motor carrier requirements for matters such as record keeping, driver qualification and fitness, driver duties and hours of service, vehicle inspections and maintenance, and transportation of hazardous materials. *See* 49 C.F.R. §§ 390-397. The common sense answer is that the responsibility for these matters should lie with the employer rather than an individual driver, even if the driver is also registered as a motor carrier (owner-operator). The Court finds no persuasive value from this FMCSA guidance when considering the separate question of vicarious liability for the driver's negligence. To the contrary,

because the federal motor carrier statutes do not address tort liability, the Court doubts that FMCSA intended to express any view regarding the issue of one motor carrier's vicarious liability for the negligence of another motor carrier.

For these reasons, the Court finds that Plaintiffs have failed to demonstrate a genuine issue of material fact regarding their claim against Bee-Line of vicarious liability for the negligence of Mr. Copeland's employee, Mr. Victorian. Therefore, this claim fails as a matter of law.

## C.      Negligent Hiring

Although Bee-Line denies it "hired" Mr. Copeland to deliver the load of Owens Corning freight involved in the accident, it is undisputed that Bee-Line contracted with his sole proprietorship to perform the transportation services that Bee-Line was obliged to provide for Owens Corning. Bee-Line concedes that the state laws of all jurisdictions connected with this case "recognize a cause of action for the negligent hiring of an independent contractor." *See* Bee-Line's Mot. Summ. J. [Doc. No. 202] at 20 n.4 (citing *Western Stock Center, Inc. v. Sevit, Inc.*, 578 P.2d 1045, 1048 (Colo. 1978); *Hudgens v. Cook Indus., Inc*., 521 P.2d 813, 816 (Okla. 1973); *Malone v. Ellis Timber, Inc*., 990 S.W.2d 933, 936 (Tex. App. 1999)). Bee-Line seeks summary judgment on the ground that  Plaintiffs lack sufficient evidence to establish an essential element of their negligent hiring claim, that is, Bee-Line breached its duty to use reasonable care in selecting Mr. Copeland's company to perform the transportation services requested by Owens Corning and a more thorough investigation would have revealed Trinity Delivery Service was not competent for the job.[14]

---

[14]  Bee-Line does not dispute that it had a legal duty to Plaintiffs to select a competent trucking company, that Plaintiffs were injured, or that the accident was caused by deficiencies in Mr. Copeland's company that a reasonable investigation would have revealed. *See, e.g.*, *Raleigh v. Performance Plumbing*
(continued...)

Bee-Line bases its arguments almost entirely on the Oklahoma Supreme Court's opinion in *Hudgens*, which involved the hiring of a commercial truck driver as an independent contractor to haul a load of wheat. The court held that the employer had a duty to exercise reasonable care in selecting a motor carrier and was responsible for injuries caused by the driver's negligence if the employer knew or should have known the person selected was not a "competent contractor," that is, "one who possesses the knowledge, skill, experience, personal characteristics, and available equipment which a reasonable man would realize that an independent contractor must have in order to do the work which he contracts to do without creating unreasonable risk of injury to others." *Hudgens*, 521 P.2d at 816.[15] The court held that the facts of that case raised a triable issue of whether the defendant was negligent; the defendant made no inquiries at all into the contractor's fitness and, if it had, could have discovered a lengthy history of arrests, accidents, safety violations, and drunk driving, and that the contractor had no permit to haul grain in Oklahoma, did not comply with federal highway safety regulations, and used defective and unsafe equipment.

Upon consideration of Bee-Line's arguments in light of the facts shown by the case record, the Court finds that Plaintiffs have sufficiently demonstrated a genuine dispute of material facts with regard to the reasonableness of Bee-Line's decision to contract with Mr. Copeland, doing business as Trinity Delivery Service, for the Owens Corning load due to be picked up on February 21, 2011. In reaching this conclusion, the Court is constrained by Rule 56 to accept all supported facts as true,

---

[14](...continued)
*and Heating*, 130 P.3d 1011, 1015 (Colo. 2006) (stating in a negligent hiring case: "To obtain submittal of a negligence claim to a jury, the plaintiff must establish a prima facie case demonstrating the following elements: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury."). Bee-Line disputes only the second element, a breach of its duty to Plaintiffs.

[15] Although not cited in *Hudgens*, this standard appears in commentary to the Restatement (Second) of Torts, § 411 (1965), adopted by the Colorado Supreme Court in *Western Stock Center*, 578 P.2d at 1048.

and to draw all reasonable inferences from those facts in Plaintiffs' favor, regardless whether the Court would draw the same inferences. The Court is also constrained by the lack of any facts or evidence in the case record regarding Bee-Line's policies or procedures for selecting motor carriers, or any industry standards or recommended hiring criteria that ordinarily guide contracting decisions in the trucking industry. *See Hudgens*, 521 P.2d at 815 (noting testimony regarding practices of another wheat shipper with respect to haulers' credentials). Accordingly, the Court, like any jurors called to judge Bee-Line's conduct, must make a common sense assessment of the reasonableness of Bee-Line's decision.

To that end, the facts relevant to Plaintiffs' negligent hiring claim include that Bee-Line's investigation consisted of speaking with Mr. Copeland in Texas on the morning of the day set for pick-up of the Owens Corning shipment in Denver and asking him the name of his trucking business and his motor carrier number. Bee-Line also checked FMCSA's online database to determine that Mr. Copeland's operating authority was active, he had insurance coverage, and he did not have a negative safety rating. In fact, Mr. Copeland and Trinity Delivery Service had no safety rating. Bee-Line (and its industry expert) contend this fact is immaterial, but reasonable persons could conclude it warranted further inquiry. *See*, *e.g.*, *Schramm v. Foster*, 341 F. Supp. 2d 536, 551 (D. Md. 2004) (finding a duty of inquiry despite the lack of a negative safety rating).[16] Bee-Line also notes that its designated expert, Ronald Ashby, has expressed an opinion that contracting with Trinity Delivery Service to transport the Owens Corning load was a reasonable decision, while Plaintiffs' expert provided no opinion on this issue. However, because Mr. Ashby does not identify

---

[16] Bee-Line's expert states that "[t]he majority of the motor carrier population (78%) have [sic] not been assigned a safety rating." *See* Bee-Line's Mot. Summ. J., Ex. 2 [Doc. No. 202-2] at 2-3. In view of the prevalence of this circumstance, its significance is unclear.

any industry standards or practices regarding contracting decisions, or otherwise explain the basis for his conclusion, the Court finds that a fact-finder could reasonably give his opinion little weight.

Assuming Bee-Line had a duty of inquiry, a reasonable jury could find that Bee-Line's efforts were insufficient to decide that Mr. Copeland or Trinity Delivery Service was a competent contractor for the Owens Corning job. Bee-Line did not obtain verification of Mr. Copeland's insurance coverage before contracting with him. It did not request any information concerning the trucking experience of Mr. Copeland, his company (which had been in operation for less than eight months), or his drivers. Bee-Line did not request any information or documentation from Mr. Copeland regarding his company's equipment or maintenance practices, the credentials or safety records of its truck drivers, or the company's trucking experience in Colorado. Viewed most favorably to Plaintiffs, the facts reflect that Bee-Line conducted only a minimal inquiry into the competence of Mr. Copeland's company to perform the job for which it was selected.

In short, on the summary judgment record presented, the Court finds that Plaintiffs have come forward with sufficient facts to demonstrate a triable issue of negligent conduct by Bee-Line in its hiring of Mr. Copeland's proprietorship for the shipment at issue.

## D.    Punitive Damages

Bee-Line also seeks a summary judgment ruling on the issue of whether punitive damages are available under the facts shown by the case record. Plaintiffs assert that this issue is governed by Oklahoma law and, specifically, its punitive damages statute authorizing recovery upon clear and convincing evidence that "the defendant has been guilty of reckless disregard for the rights of others." *See* Okla. Stat. tit. 23, § 9.1(B)(1). Plaintiffs contend "there is competent evidence Bee-Line Delivery acted with reckless disregard in allowing an unqualified [employee] to be the Dispatch Manager on interstate hauls that included the State of Colorado, and that [the dispatcher] acted recklessly in hiring Copeland at the last minute and failing to ask him any questions about his or his drivers' competency." *See* Pls.' Resp. Bee-Line's Mot. Summ. J. [Doc. No. 222] at 30. Bee-Line argues that the evidence is insufficient to establish reckless disregard for Plaintiffs' rights, as required by § 9.1(B).

Assuming, without deciding, that Oklahoma law provides the appropriate standard, the Oklahoma Uniform Jury Instructions would guide a jury's determination of the issue of punitive damages. Instruction 5.6 provides in pertinent part:

> The conduct of [Defendant] was in reckless disregard of another's rights if [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that [his/her/its] conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.

Okla. Unif. Civil Jury Instr. 5.6 (available at http://www.oscn.net/applications/oscn). In light of the determination that Plaintiffs' negligent hiring claim must be submitted to the jury, the Court finds that a jury must decide the issue of whether the degree of negligence, if any, could be considered reckless. Further, in light of the obvious danger to the public presented by the operation of

semitrailer truck carrying a heavy load of shingles by a trucking company that is not a "competent contractor," if that is the jury's finding, the Court finds that the availability of punitive damages presents a factual issue to be determined by the jury.

**Conclusion**

For these reasons, the Court finds that Bee-Line is entitled to summary judgment on Plaintiffs' vicarious liability claim against Bee-Line, but that genuine disputes of material facts preclude summary judgment on Plaintiffs' negligent hiring claim regarding Bee-Line's selection of Mr. Copeland or Trinity Delivery Service for the Owens Corning shipment and the issue of punitive damages.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 46] is DENIED and that Defendant Bee-Line Delivery Service, Inc.'s Motion for Summary Judgment [Doc. No. 202] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 27th day of March, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE