IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID RODNEY BEAVERS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-1442-D |
| | ) | |
| LENNIERE VICTORIAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is Defendants' Motion in Limine on Plaintiffs' Life Care Plan Expert Sherry Latham's Testimony [Doc. No. 199], filed pursuant to Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[1] Defendants challenge certain opinions of Plaintiffs' expert witness, Sherry Latham, on the grounds that she is not qualified to render the challenged opinions and that they lack a reliable basis in the knowledge and experience of her discipline. The Motion is fully briefed and at issue.[2]

This diversity case concerns a commercial trucking accident in which Plaintiffs David Rodney Beavers and Cynthia D. Beavers (husband and wife) suffered serious personal injuries, including traumatic brain injuries. During the litigation, Plaintiffs retained Ms. Latham, who is a registered nurse and a certified life care planner (among other credentials), to formulate life care plans on which they will rely to establish damages related to future care needs. Defendants' Motion

---

[1] The Motion is made by Defendants Shonda Copeland as Administrator of the Estate of Anthony B. Copeland, Bee-Line Delivery Service, Inc., Bee-Line Transportation, Inc., and Gulf Delivery Systems, Inc. An additional movant, Defendant Great Western Leasing and Sales, Inc., was voluntarily dismissed by Plaintiffs after the Motion was filed.

[2] Plaintiffs filed a timely response brief [Doc. No. 244], and Defendants filed a reply [Doc. No. 245].

challenges only the portions of Ms. Latham's plans in which she includes expenses for attendant care or assisted living placement beginning at age 70 for each plaintiff, Mr. Beavers in 2034 and Mrs. Beavers in 2036. Defendants contend that Ms. Latham is not qualified to opine about the likelihood of future cognitive decline or the need for assisted living services 20 years from now, and that her opinions in this area are unreliable because they lack a scientific basis or methodology.

**Standard of Decision**

The Supreme Court's decision in *Daubert* has been codified in Fed. R. Evid. 702, which sets forth the standards for admissibility of expert opinions and defines the trial court's gatekeeper role.

> Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*.
>
> Reliability questions may concern the expert's data, method, or his application of the method to the data. The party offering the expert must show that the method employed by the expert . . . is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. . . .

*United States v. Nacchio*, 555 F.3d 1234, 1241-42 (10th Cir. 2009) (en banc) (internal quotations and citations omitted).

**Discussion**

**A.   Ms. Latham's Qualifications**

In the arguments supporting the Motion, Defendants do not challenge Ms. Latham's credentials as a life care planner or her competence to render an opinion about Plaintiffs' future needs generally. They instead challenge only Ms. Latham's expertise regarding future cognitive

2

effects of Plaintiffs' traumatic brain injuries. Plaintiffs dispute that Ms. Latham's projection of future cognitive decline was based on her own opinions; they note that Ms. Latham relied on the medical opinions of Dr. Shawn Smith, M.D., a physiatrist retained by Plaintiffs to assess the injuries and medical conditions of, and the treatments needed by, Mr. and Mrs. Beavers. In reply, Defendants concede the substance of Dr. Smith's opinions but argue that Ms. Latham's life care plans "go far beyond Dr. Smith's actual recommendations." *See* Reply Br. [Doc. No. 245] at 2.

Upon careful consideration, the Court finds that Ms. Latham appears well qualified to offer opinions regarding the future costs of attendant care or assisted living services for Mr. and Mrs. Beavers. Contrary to Defendants' argument, Ms. Latham's life care plans do not depend on her own diagnoses or medical opinions regarding the cognitive decline that is likely to result from Plaintiffs' brain injuries. Instead, Ms. Latham relied on the medical opinions of Dr. Smith, who expressly opined that "patients with traumatic brain injury are more likely to develop dementia or decline in cognition with aging" and, specifically, that Mr. Beavers "is at a higher risk for further cognitive decline as a result of his brain injury." *See* Pls.' Resp. Br., Ex. 4 (Independent Medical Evaluation, Cynthia Beavers) at 7; Ex. 5 (Independent Medical Evaluation, Rodney Beavers) at 9. Dr. Smith also opined: "Provisions for attendant care after age 70 should be available;" and "provisions for assisted living are also recommended." *See id*., Ex. 5 at 9; Ex. 4 at 7. Defendants have filed no timely *Daubert* challenge to Dr. Smith's opinions.

Further, Ms. Latham also based her opinions regarding future attendant care or assisted living services on a likelihood of "early onset arthritis and overuse syndrome related to the traumatic orthopedic injuries sustained during the motor vehicle accident" and a prediction that daily needs will increase "as age and disability combine." *See* Defs' Motion, Ex. 1 (Mr. Beavers' Life Care

3

Plan) at 64-65; *see also* Ex. 2 (Mrs. Beavers' Life Care Plan) at 45. Plaintiffs have submitted with their response brief a declaration of Ms. Latham in which she cites published studies – also listed as references in each life care plan – that provide empirical support for the assumptions on which she bases her opinions regarding future needs. *See*, *e.g.*, Pls.' Resp. Br., Ex. 3 (Declaration of Sherry Latham) at pp.13-14; *see also* Defs' Motion, Ex. 1 at pp.68-70; Ex. 2 at pp.48-50. Defendants have not challenged Ms. Latham's opinions regarding age-related physical decline and do not dispute the research studies cited in her declaration.

Accordingly, the Court rejects Defendants' challenge to Ms. Latham's qualifications to opine that Mr. and Mrs. Beavers may need attendant care or assisted living services beginning at age 70.

**B.      Reliability of Ms. Latham's Opinion**

Defendants also assert that Ms. Latham's opinions regarding Plaintiffs' future needs for attendant care or assisted living services are unsupported by any scientific basis or methodology and, therefore, are unreliable. Defendants argue that Ms. Latham makes a "speculative leap" between Dr. Smith's findings and a "need [for] assisted living services beginning at age 70 and through life expectancy." *See* Defs.' Reply Br. [Doc. No. 245] at 5. Because Ms. Latham's opinions are based on Dr. Smith's expressed medical opinions, however, the Court finds that the challenged opinions are sufficiently reliable to be admissible.

Further, Ms. Latham provides two life care plan options for each of Mr. Beavers and Mrs. Beavers, one providing for home placement with attendant care and a second providing for facility placement (assisted living). Each provides an itemized listing of all care needs reflected in the medical records, which are summarized in the plans, as well as other assessments and interviews. From the approaches shown by the plans themselves, it is apparent that Ms. Latham is offering

4

estimations of future care needs and expenses. Defendants are free to challenge these estimations through cross-examination of Ms. Latham at trial. The Court does not find Ms. Latham's opinions to be so speculative and lacking in reliable foundation that her testimony regarding the life care plans she prepared should be deemed inadmissible. *See Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 170-71 (1st Cir. 2005) (opinion testimony of life care planner was properly admitted); *see also Sands v. Kawasaki Motors Corp.*, 513 F. App'x 847, 856 (11th Cir. 2013) ("the number presented by the life care planner was simply an estimate, from which the jury is permitted to draw its own conclusion").

IT IS THEREFORE ORDERED that Defendants' Motion in Limine on Plaintiffs' Life Care Plan Expert Sherry Latham's Testimony [Doc. No. 199] is DENIED.

IT IS SO ORDERED this 27th day of March, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE